# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE M. NATALE, as Administratrix of ) <br> The ESTATE OF RICHARD NATALE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE ESPY CORPORATION, ) <br> WHITNEY HARRIS, ) <br> MARK E. SMITH, and ) <br> THOMAS W. POTTHAST, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. 13- <br><br> **COMPLAINT** |

## THE PARTIES

1. Richard F. Natale ("Richard Natale"), who died unexpectedly and intestate in 2006, was a resident of Brimfield, Massachusetts, and a founding member of defendant The Espy Corporation ("Espy").

2. Plaintiff, Suzanne M. Natale ("Suzanne Natale") is Administratrix of the Estate of Richard Natale (the "Estate"), and represents Richard Natale's beneficiaries.

3. Defendant Espy is a closely held Subchapter S Texas corporation with a principal place of business in Austin, Texas.

4. Defendant Mark E. Smith is President and Treasurer of Espy and, upon information and belief, resides in Austin, Texas.

5. Defendant Thomas W. Potthast, Jr., is a Vice President of Espy and, upon information and belief, resides in Windermere, Florida.

6. Defendant Whitney E. Harris is a Secretary of Espy and, upon information and belief, resides in Austin, Texas.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) (1) in that there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, on the independent basis that it is a civil action arising in part under the laws of the United States.

9. Plaintiff's state law claims arise out of the transactions and occurrences that are the subject of plaintiff's RICO claims. This Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is appropriate in this district pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claim occurred in this district and the property that is the subject of the action is situated in this district.

11. Venue is also appropriate in this district pursuant to 18 U.S.C. § 1965(a), since the defendants transacted their affairs in this district.

## STATEMENT OF FACTS

12. Richard Natale was a computer systems engineer, skilled software developer and one of the founding members of Espy.

13. Richard Natale resigned from a secure position at Silicon Graphics, taking substantial personal and financial risk in opening Espy as a new venture.

14. Espy was and is a developer of commercial products for a variety of scientific analysis applications, including radio frequency exploitation.

15. Richard Natale's work ethic and programming talent were instrumental in Espy's growing success as a developer of a variety of analytic and scientific analysis applications.

2

16. Richard Natale died tragically in a motor vehicle accident on July 6, 2006, at the age of 48.

17. At the time of his death, Richard Natale was employed full-time at Espy as Chief Software Engineer, and owned 300 common shares of Espy, or approximately 24% of the shares issued and outstanding.

18. The Estate's shares in Espy constitute its only asset.

19. At the date of Richard Natale's death, defendant Smith owned 31.2% of the issued and outstanding common shares of Espy.

20. At the date of Richard Natale's death, defendant Potthast owned 22.0% of the issued and outstanding common shares of Espy.

21. At the date of Richard Natale's death, defendant Harris owned 23.4% of the issued and outstanding common shares of Espy.

22. The Estate, Smith, Harris, Potthast are the sole shareholders and owners of Espy.

23. Throughout his career with Espy, Richard Natale resided in the District of Massachusetts, and worked primarily from his home in Brimfield, Massachusetts.

24. During all times relevant to this complaint, Espy did and does business in Massachusetts.

25. A true and accurate copy of a screen shot from Espy's website in 2012 is attached hereto as Exhibit A.

26. Richard Natale left his wife Suzanne, son Nicholas, and minor son Samuel as beneficiaries of his Estate.

27. Suzanne Natale was appointed Administratrix of the Estate on October 13, 2006, by the Probate and Family Court, Hampden County, Massachusetts, Docket No. 06P1862AD1.

3

28. Since Richard Natale's death, defendants Smith, Harris and Potthast have engaged in a continuing course of wrongful conduct with the intent to deprive the Estate and its beneficiaries, Suzanne Natale and Richard's sons, including minor son Samuel Natale, of the true value of Richard Natale's ownership interest in Espy.

29. The continuing misconduct of Smith, Harris, and Potthast substantially defeated, and continues to defeat, the Estate's reasonable expectations of benefits to be derived from retaining its shares.

30. Smith, Harris and Potthast engaged, and continue to engage, in burdensome, harsh and wrongful acts, described in part below, as well as a lack of probity and fair dealing in the affairs of Espy to the prejudice of the Estate.

31. The continuing wrongful conduct of Smith, Harris and Potthast harmed and continues to harm the Estate, and constitutes a visible departure from the standards of fair dealing and a violation of fair play on which the Estate was and is entitled to rely.

32. Examples of the continuing acts and omissions of defendants Espy, Smith, Harris and Potthast include, but are not limited to, the following:

   a. In or about early 2007, defendants Smith, Harris and Potthast caused to be issued and circulated through the mails an IRS Schedule K-1 for calendar year 2006, which allocated $132,610 in income to the Estate.

   b. Based on the allocation of $132,610 in income to the Estate, the Estate incurred substantial federal and state tax liabilities totaling approximately $52,964.00.

   c. The Estate received no dividend or other distribution of any kind from Espy in or after 2006, and thus had no cash to cover the tax liabilities.

4

d.  In 2008 and 2009, defendants Smith, Harris and Potthast caused Espy to issue additional common shares of Espy to themselves but did not issue any additional shares to the Estate.

e.  Defendants have not provided to the Estate the minutes of the rump shareholders meeting at which the issuance of the shares was purportedly approved.

f.  In or about early 2009, defendants Smith, Harris and Potthast caused to be issued and circulated through the mails an IRS Schedule K-1 for calendar year 2008.

g.  The IRS Schedule K-1 for the calendar year 2008 falsely stated that the Estate's percentage of stock ownership was 12%.

h.  But for the rump shareholders meeting and defendants' issuance of additional shares to themselves, the Estate's interest was approximately 24% of Espy.

i.  Upon information and belief, this misleading document was circulated by U.S. mail, and the false information regarding share ownership percentages was reported to the Department of the Treasury, Internal Revenue Service.

j.  In or about early 2010, defendants Smith, Harris and Potthast caused to be issued and circulated through the mails an IRS Schedule K-1 for the calendar year 2009, which allocated $132,477.00 in income to the Estate.

k.  Based on the allocation of $132,477.00 in income to the Estate, the Estate incurred substantial 2009 federal and state tax liabilities totaling approximately $48,379.00.

l.  The Estate received no dividend or other distribution of any kind from Espy in or after 2009, and thus had no cash to cover the tax liabilities.

m.  The 2009 IRS Schedule K-1, which misrepresented the Estate's share of Espy, was circulated by U.S. mail to Espy's shareholders and was, upon information and

5

belief, provided by mail or wire to the Department of the Treasury, Internal Revenue Service.

n. In or about early 2011, defendants Smith, Harris and Potthast caused to be issued and circulated through the mails an IRS Schedule K-1 for calendar year 2010, which allocated $216,609 in income to the Estate.

o. The allocation of $216,609 in income to the Estate caused the Estate to incur substantial 2010 federal and state tax liabilities totaling approximately $80,209.00.

p. The Estate received no dividend or other distribution of any kind from Espy in or after 2010, and thus had no cash to cover the tax liabilities.

q. The 2010 IRS Schedule K-1, which misrepresented the Estate's share of Espy, was circulated by U.S. mail to Espy's shareholders and was, upon information and belief, provided by mail or wire to the Department of the Treasury, Internal Revenue Service.

r. In or about early 2012, defendants Smith, Harris and Potthast caused to be issued and circulated through the mails an IRS Schedule K-1 for calendar year 2011, which allocated $153,224 in income to the Estate.

s. The allocation of $153,224 in income to the Estate caused the Estate to incur substantial 2011 federal and state tax liabilities totaling approximately $46,165.00.

t. The Estate received no dividend or other distribution of any kind from Espy in or after 2011, and thus had no cash to cover the tax liabilities.

u. The 2011 IRS Schedule K-1, which misrepresented the Estate's share of Espy, was circulated by U.S. mail to Espy shareholders and, upon information and belief, this false document was provided by mail or wire to the Department of the Treasury, Internal Revenue Service.

v. During the period from 2009 to date, defendants Smith, Harris and Potthast have siphoned the assets of the corporation by paying themselves substantial salaries and bonuses, leaving the Estate with no income or other return on its investment in Espy.

w. Espy's "bonus liabilities" as of December 31, 2009, are listed in its balance sheet as ▮▮▮▮▮▮▮

x. Espy's "bonus liabilities" as of December 31, 2010, are listed in its balance sheet as ▮▮▮▮▮▮▮

y. Espy's "bonus liabilities" in as of December 31, 2011, are listed on its balance sheet as ▮▮▮▮▮▮▮

z. Espy operates with a small staff and upon information and belief, a substantial portion of the 2009-2011 bonus liabilities of ▮▮▮▮▮▮▮ was, or is intended to be, distributed among defendants Smith, Harris and Potthast.

aa. Upon information and belief, defendants Smith, Harris and Potthast have made statements to Espy's lenders and others – using the mails and wire communications – deliberately understating the Estate's interest in Espy, and overstating their own interest in Espy.

bb. Defendants Espy, Smith, Harris and Potthast have refused to make a reasonable offer for the purchase of the Estate's shares.

cc. Defendants Espy, Smith, Harris and Potthast did not disclose to the Estate that it would receive no dividends or cash in any form to cover the mounting tax liabilities.

dd. Defendants Espy, Smith, Harris and Potthast did not at any time disclose to the Estate that it would receive no benefits whatsoever for its investment in Espy.

7

33. As a result of defendants' deceptive conduct, fraud, and breaches of fiduciary duty using the mails and their other acts, omissions and breaches, plaintiff has incurred substantial costs and sustained damages relating to, among other things, the following:

   a. Monetary loss of the fair value of the shares in Espy and a fair return on the Estate's investment;

   b. Other monetary damages as set forth below;

   c. Attorneys fees; and

   d. Other substantial losses as will be proven at trial.

## Count I
### (Unjust Enrichment)

34. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, above.

35. Defendants Smith, Harris and Potthast were not entitled a) to receive additional common shares of Espy, and b) to receive tax benefits and other income while failing to consider the tax consequences to the Estate of the allocation of flow-through income as reflected in annual K1 statements issued in 2006, 2010, 2011 and 2012.

36. Due to shifting their tax burden on the Estate, defendants have been benefitted at plaintiff's expense, and thus have been unjustly enriched in an amount to be determined at trial, plus interest.

## Count II
### (Breach of Fiduciary Duty)

37. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, above.

8

38. Defendants Smith, Harris and Potthast owed a fiduciary duty under both Texas and Massachusetts law to the Estate as a minority shareholder in a closely held corporation.

39. During the period from 2006 through the date of this complaint, defendants Smith, Harris and Potthast breached that fiduciary duty through burdensome, harsh and wrongful conduct as described in paragraph 32 and elsewhere above.

40. As a direct and proximate result of defendants' breach of fiduciary duty, plaintiff has suffered and will continue to suffer monetary and other damages.

## Count III
### (Conversion)

41. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, above.

42. During the period 2008 through the date of this complaint, defendants Smith, Harris and Potthast wrongfully withdrew, removed and otherwise converted funds which should have been distributed *pro rata* among the shareholders, in violation of the Estate's right to be treated fairly as a minority shareholder of Espy.

43. Defendants were aware that they were not entitled to sole enjoyment of all corporate benefits.

44. As a result of defendants conduct, plaintiff has and will continue to suffer damages.

## Count IV
### (Civil Conspiracy)

45. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, above.

46. During the period 2008 through the date of this complaint, defendants Smith, Harris and Potthast acted by agreement among themselves and with others to accomplish the wrongful

9

acts alleged in ¶ 32 and elsewhere above, which constituted overt acts in furtherance of the conspiracy, for the period 2008 through the date of this complaint.

47. Defendants' conspiracy has caused plaintiff to sustain damages.

## Count V
### (Fraud)

48. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, above.

49. Defendants Espy, Smith, Harris and Potthast made false and deceitful representations of material facts to the Estate and its representatives, and failed to disclose material facts, for the purpose of deceiving the Estate and enhancing the value of their interest in Espy to the detriment of the Estate.

50. Defendants' representations and omissions were made with the knowledge of their falsity for the purpose of inducing the Estate to act or refrain from acting.

51. The Estate reasonably relied on defendants' false representations and omissions as true and acted or refrained from acting to its detriment based upon such representations.

52. As a direct and proximate result of defendants' fraud and deceit, the Estate has suffered and will continue to suffer substantial damages.

## Count VI
### (Theft)

53. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, above.

54. Defendants Espy, Smith, Harris and Potthast have unlawfully appropriated property with intent to deprive the rightful owner, the Estate, of that property, in violation of Tex. Penal Code Ann. § 31.03.

55. Plaintiff has sustained substantial damages as a result of defendants' theft of its interest in Espy.

56. In addition to damages, plaintiff is entitled to court costs and reasonable and necessary attorney's fees, as set forth in Tex. Civ. Prac. And Rem. Code Ann. §§ 134.003 and 134.005.

## Count VII
### (RICO Conspiracy)

57. Plaintiffs incorporate by reference herein the allegations contained in the preceding paragraphs, above.

58. At all times material to this complaint, Espy was an "enterprise" as that term is defined in Title 18, United States Code, § 1961(4), namely a "corporation . . . or other legal entity," which engaged in and the activities of which affected interstate and foreign commerce.

59. Defendants Smith, Harris and Potthast were employed by Espy at all times relevant to this complaint.

60. Beginning sometime after the death of Richard Natale, and continuing to date of filing of this complaint, in the District of Massachusetts and elsewhere, defendants Smith, Harris and Potthast, being persons employed by and associated with an enterprise, namely Espy, which engaged in, and the activities of which affected, interstate and foreign commerce, did conspire together with persons known and unknown, in the District of Massachusetts and elsewhere, to violate:

    a. Title 18, United States Code, § 1962(b), that is, acquiring and maintaining an interest in an enterprise affecting interstate and foreign commerce through a pattern of racketeering activity consisting of mail and wire fraud chargeable under

the laws of the United States, and extortion chargeable under the laws of Massachusetts.

b. Title 18, United States Code, § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity consisting of multiple acts involving mail and wire fraud chargeable under the laws of the United States, and extortion chargeable under the laws of Massachusetts.

In violation of Title 18, United States Code, §§ 1962(d) and 1964(a)

61. It was part of the conspiracy that defendants Smith, Harris and Potthast and others agreed that at least two acts of racketeering would be committed by one or more conspirators in the conduct of the affairs of the enterprise.

62. It was further part of the conspiracy that defendants sought to leverage every possible financial advantage from the untimely death of Richard Natale and expand the value of their ownership of Espy at the expense of the Estate.

63. It was further part of the conspiracy that defendants Smith, Harris and Potthast agreed to oppress and reduce the value of the Estate's interest in Espy and also to deny the Estate any financial benefit from its ownership interest in the enterprise.

64. Defendants conspired to acquire and maintain an interest in an enterprise affecting interstate and foreign commerce through a pattern of racketeering activity, and to participate in the affairs of an enterprise through a pattern of racketeering activity, through agreement to commit the following acts of racketeering:

a. Acts of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343, to wit: devising a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises

12

     i. by not disclosing to the Estate that it would receive no dividend or other cash to pay accrued taxes, and

     ii. by not disclosing to the Estate that it would receive no benefit for its investment in Espy;

and in furtherance of these schemes, mailings and electronic transmissions of IRS Schedule K-1's in:

     i. Early 2007, for the Schedule K-1 for calendar year 2006;

     ii. Early 2010, for the Schedule K-1 for calendar year 2009;

     iii. Early 2011, for the Schedule K-1 for calendar year 2010; and

     iv. Early 2012, for the Schedule K-1 for calendar year 2011;

to owners of Espy, including the Estate, to Espy's accountants and attorneys.

b. Acts of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343, to wit: devising a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, by assigning income to the Estate, without an accompanying pro rata dividend payment to all shareholders or other cash distribution, resulting in a financial benefit to defendants Smith, Harris and Potthast, and in harm to the Estate, and in furtherance of these schemes, mailings and electronic transmissions of IRS Schedule K-1's in:

     i. Early 2007, for the Schedule K-1 for calendar year 2006;

     ii. Early 2010, for the Schedule K-1 for calendar year 2009;

     iii. Early 2011, for the Schedule K-1 for calendar year 2010; and

     iv. Early 2012, for the Schedule K-1 for calendar year 2011;

to the Department of the Treasury, Internal Revenue Service.

  c. Acts of extortion under the laws of Massachusetts, to wit: placing the Estate and its administratrix in fear of economic harm, in violation of Mass. Gen. L. ch. 271, § 39(b). These acts occurred, among other times, on each occasion that defendants Smith, Harris and Potthast mailed, as set forth in ¶63.a. *supra,* Schedule K-1's reflecting the assignment of income, and thus the accrual substantial tax liability, to the Estate. The goal of the extortion was to exert financial pressure on the Estate, knowing that the Estate was unable to pay federal and state taxes, interest and penalties, and deprive it of benefits of its ownership in Espy.

65. Pursuant to Title 18, United States Code, § 1964(c), based on the injury to plaintiff's business and property by reason of the preceding violation of § 1962, plaintiff is entitled to damages to be proven at trial, including but not limited to:

  a. threefold the total federal and state taxes, interest and penalties caused by defendants' manifold breaches, as set forth above, which amounts to no less than $960,450.00 as of the date of this complaint;

  b. threefold the amount of ordinary business income attributed to the Estate, from 2006 to date, that was never distributed to the Estate in dividends or in any other form, which amounts to no less than $1.9 million as of the date of this complaint;

  c. the cost of this suit;

  d. reasonable attorneys fees; and

  e. Such other relief as this Court deems just and proper.

## Count VIII
## Injunctive Relief Pursuant to 18 U.S.C. § 1964(a)

66.    Pursuant to Title 18, United States Code, § 1964(a), plaintiff requests that this Court order defendants Smith, Harris and Potthast to divest themselves of the shares in the enterprise that they purported to issue after the death of Richard Natale and to return those shares to Espy.

67.    Plaintiff further requests that the above-named defendants be permanently enjoined from engaging in any attempt to oppress the minority ownership interest of the Estate in Espy, and in particular seeks an order precluding defendants from further breaches of fiduciary duty to the Estate.

68.    Plaintiff further requests that this Court order the immediate distribution of all income that was allocated to the Estate on the above-referenced Schedule K-1s for the years 2006, 2009, 2010 and 2011 based on its correct 24% ownership interest.

69.    Plaintiff further requests that this Court order an independent appraisal of the current value of Espy.  Defendants Smith, Harris and Potthast should be ordered to personally pay the costs of this appraisal.

WHEREFORE, the plaintiffs ask this Court to enter Judgment in its favor and against each defendant with respect to plaintiffs' claims and award relief as follows:

a.  Money damages, including treble damages under RICO;

b.  Equitable relief, including relief based upon RICO violations and unjust enrichment to defendants;

c.  Interest, costs, and attorneys fees; and

15

    d.  Such other relief as the Court deems just, proper, and equitable.

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: January 11, 2013                            The Plaintiff,
THE ESTATE OF RICHARD NATALE
By Its Attorneys:


/s/*Andrew Levchuk*
Andrew Levchuk
BBO No. 545189
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115-5507
Tel: (413) 781-2820
Fax: (413) 272-6805
alevchuk@bulkley.com

Case 3:13-cv-30008-MAP Document 1 Filed 01/15/13 Page 16 of 16