UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE M. NATALE, as | ) |
| Administratrix of The | ) |
| ESTATE OF RICHARD NATALE, | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) C.A. NO. 13-cv-30008-MAP |
| | ) |
| THE ESPY CORPORATION, | ) |
| WHITNEY E. HARRIS, | ) |
| MARK E. SMITH, and | ) |
| THOMAS W. POTTHAST, Jr., | ) |
| Defendants | ) |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
(Dkt. No. 8)

March 10, 2014

PONSOR, U.S.D.J.

## I.   INTRODUCTION

Plaintiff, administratrix of her deceased husband's estate, brought suit against Defendants for, _inter alia_, diluting the value of the estate's stock in Defendant Espy Corporation ("Espy").  Defendants are Mark E. Smith, a resident of Texas and President and Treasurer of Espy; Thomas W. Potthast, Jr., a resident of Florida and Vice-

President of Espy; Whitney E. Harris, a resident of Texas and Secretary of Espy; and Espy, a closely held S-corporation incorporated in Texas with its principal place of business in Austin, Texas.

Plaintiff has asserted six common law claims against Defendants -- unjust enrichment, breach of fiduciary duty, conversion, civil conspiracy, fraud, and theft -- and two counts under the federal civil RICO statute. 18 U.S.C. §§ 1961-1965. Defendants have moved to dismiss the complaint. (Dkt. No. 8.) In the alternative, Defendants request that the case be transferred to the Western District of Texas.

Because Plaintiff successfully crosses the "plausibility" threshold with respect to her breach of fiduciary duty, unjust enrichment, and civil conspiracy claims, but fails to do so with respect to the others, the court will allow Defendants' Motion to Dismiss in part. Given the hardship a change of venue would create for Plaintiff, the court will also deny Defendants' Motion to Transfer Venue.

## II.   <u>BACKGROUND</u>[1]

Plaintiff Suzanne M. Natale, widow of Richard Natale ("Richard"), was the administratrix of her deceased husband's estate.  She was also the representative for Richard's two beneficiaries, their sons.  While he was alive, Richard helped develop Espy Corporation and served as its Chief Software Engineer.  He worked from his home in Massachusetts.

On July 26, 2006, Richard unexpectedly died in a car accident.  At the time of his death, he owned 300 shares of common stock in Espy, or roughly 24% of all issued and outstanding shares.  The remainder of the company was owned by Defendants Smith, Potthast, and Harris.  Richard's shares in Espy were the only asset in his estate.

Since Richard's death, Defendants have allegedly engaged in a pattern of wrongful conduct.  First, Defendants deliberately diluted Plaintiff's ownership in Espy by

---

[1] As with all motions to dismiss, the court accepts the well-pleaded factual allegations contained in the complaint, drawing reasonable inferences in Plaintiff's favor.  <u>Gargano v. Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009).  The facts are therefore drawn from Plaintiff's complaint.  (Dkt. No. 1).

issuing new stock to every other shareholder.  In 2008 and 2009, the individual Defendants provided themselves new shares, but they failed to distribute any additional ones to the estate.  Further, Defendants refused to turn over minutes of the "rump" meeting where this decision was made.

As a result of that dilution, Defendants have allegedly misrepresented the estate's share of ownership in yearly IRS Schedule K-1 filings.  ("K-1s")  After the issuance of the new stock, the 2009 K-1s incorrectly valued the estate's ownership at 12%.  The K-1s were sent to Plaintiff via U.S. mail.

Finally, Defendants have failed to pay any dividends to Plaintiff since Richard's death.  They also have failed to provide Plaintiff advance notice that no dividends would be paid.  This occurred at the same time Defendants decided to reward themselves with increased salaries and bonuses.

The absence of any payments burdened Richard's estate severely.  The K-1s allocated income to its shares and thus created a substantial tax burden.  In total, the estate has been responsible for over $227,000 in taxes for the years 2006, 2009, 2010, and 2011, despite the absence of any

financial distribution from the corporation during this time.  The K-1s for those years were also distributed via U.S. mail.

Given these events, Plaintiff has asserted two federal claims against Defendants: a violation of civil RICO, 18 U.S.C. §§ 1961-1965 (Count VII), and a claim for injunctive relief under RICO, 18 U.S.C. § 1964(a) (Count VIII).  She has, as noted above, also raised six common law claims: unjust enrichment (Count I); breach of fiduciary duty (Count II); conversion (Count III); civil conspiracy (count IV); fraud (count V); and, theft (Count VI).  The case falls under both federal question, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332.

### III.  DISCUSSION

A.  Motion to Dismiss

A motion to dismiss will be denied if Plaintiff's complaint contains "sufficient factual matter" to sustain a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 668 (2009) citing Bell Atl. Co. v. Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  If a complaint fails

to set forth "factual allegations, either direct or inferential, respecting each element necessary to sustain recovery under some actionable legal theory," then dismissal is appropriate.  <u>Centro Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005)(internal citations omitted).

For claims where "fraud lies at the core of the action," Rule 9(b) renders the pleading requirement more stringent.  In these cases, the plaintiff must usually specify the "who, what, where and when of the allegedly false or fraudulent representation."  <u>Alt. Sys. Concepts, Inc. v. Synopsis, Inc.</u>, 374 F.3d 23, 29 (1st Cir. 2004)(citations omitted).  Plaintiff must also plead specific facts establishing intent -- that is, evidence demonstrating that the defendant knew the alleged representation was false or misleading.  <u>N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale</u>, 567 F.3d 8, 13 (1st Cir. 2009).

The parties spend a significant amount of their effort disputing Plaintiff's federal RICO claims.  Given this, the court will first address those claims, before turning to

Plaintiff's common-law contentions.

    1.   <u>Federal RICO claims: Counts VII and VIII</u>

    Plaintiff brings one substantive count under RICO, 18 U.S.C. §§ 1961-1965, and seeks injunctive relief under 18 U.S.C. § 1964.[2]  Civil RICO is a "quasi-criminal" remedy that permits a plaintiff to recover from defendants who commit particularly reprehensible acts.  <u>Figueroa Ruiz v. Alegria</u>, 896 F.2d 645, 650 (1st Cir. 1990).  To plead a cause of action under RICO successfully, it is not enough merely to allege a conspiracy.  Instead, a plaintiff must offer sufficient allegations demonstrating: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity."  <u>Efron v. Embassy Suites (Puerto Rico), Inc.</u>, 223 F.3d 12, 21 (1st Cir. 2000).  A plaintiff must also establish that the RICO violation was a cause-in-fact and proximate cause of any alleged injuries.  <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992).

    Defendants, in Plaintiff's view, conspired to commit mail fraud, 18 U.S.C. §§ 1341 & 1343, and conspired to

---

    [2] In order to obtain injunctive relief, a party must establish a substantive violation.  § 1964(a).  These two claims can therefore by analyzed in one discussion.

violate the state extortion law, Mass. Gen. Laws ch. 271, §
79(b).  For the reasons set forth below, however, the
complaint fails adequately to plead either of these criminal
law violations as predicate offenses for RICO purposes.
Moreover, the complaint fails to show how these violations
amounted to a "pattern" of racketeering activity.  As a
result, the RICO claims must be dismissed.

     a.  <u>Racketeering Activity</u>

  "Racketeering activity" can take many forms, including:
counterfeiting, embezzlement, witness tampering,
trafficking, and mail and wire fraud.  18 U.S.C. §
1961(1)(B).  Certain state criminal offenses, such as
"murder, kidnaping, gambling, arson, robbery, bribery, [and]
extortion," can also constitute predicate offenses.  <u>Id.</u>

  The first predicate offense Plaintiff alleges is a
violation of the federal mail and wire fraud statute.  To
succeed on this claim, Plaintiff must demonstrate: (1) a
scheme to defraud or obtain money or property by means of
false or fraudulent pretenses; (2) the defendant's knowing
and willful participation in this scheme with the intent to
defraud, or to obtain money or property by means of false or

fraudulent pretenses; and (3) the use of the U.S. mail in furtherance of this scheme.  McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 790 (1st Cir. 1990).

Plaintiff anchors her mail fraud claim on the allegedly fraudulent K-1s.  By using the U.S. mail to distribute these documents, Defendants, according to Plaintiff, committed mail fraud.

This theory is not only insufficient under the heightened Rule 9(b) pleading standard triggered in a RICO offense grounded in fraud, Feinstein v. Resolution Trust Co., 942 F.2d 34, 42 (1st Cir. 1991), but cannot even overcome the meeker "plausibility" threshold of Rule 12(b)(6).

First, Plaintiff cannot show that any of Defendants' "statements" were false or misleading.  Plaintiff contends that her stock was diluted and that the K-1s documenting this dilution were misrepresentations.  However, Plaintiff cannot have it both ways -- if her stock was diluted, which the court takes as true, then the K-1s were necessarily accurate.  This alone is enough to undermine Plaintiff's mail fraud claim.

Second, Plaintiff fails to present facts suggesting that Defendants had any specific intent to defraud. Plaintiff contends that Defendants' goal was to put financial pressure on her by mailing her the K-1s.  She does not, however, dispute Defendants' legal obligation to distribute the documents.  26 U.S.C. § 6037(b).  No facts in the complaint suggest that Defendants, by mailing the K-1s, were doing anything more or less than complying with their obligations under federal law.

Plaintiff presents an additional predicate racketeering offense: extortion under state law.  The extortion law penalizes any communication that "threatens an economic injury to another, or threatens to deprive another of an economic opportunity, with intent to compel that person to do any act, involving the use or disposition of anything of value against his will."  Mass. Gen. Laws ch. 271, § 39(b).

Defendants violated this statute, according to Plaintiff, "knowing that the Estate was unable to pay federal and state taxes, interest and penalties, and deprive[d] it of benefits of its ownership in Espy." (Compl. 14, Dkt. No. 1.)  In other words, they sent the K-1s

to put pressure on the estate and squeeze it out of the company.  While this conduct may have been unfair, it does not constitute extortion as a matter of law.

To begin with, the K-1s cannot in themselves be construed as a threat.  Plaintiff argues that the K-1s were "implicit" threats aimed at placing financial pressure on Plaintiff.  As noted above, however, Espy is required to issue annual K-1s to its shareholders as a matter of federal law.  26 U.S.C. § 6037(b).  Defendants cannot suffer liability for distributing a communication they were <u>required</u> to mail.

Moreover, even if the K-1s <u>were</u> false, nothing about the documents were extortionate.  Plaintiff does not present facts illustrating an attempt by Defendant to gain "something of value from another with his consent induced by the wrongful use of force, or fear of threats." <u>Scheidler v. Nat'l Org. for Women, Inc.</u>, 537 U.S. 393, 409 (2003) (citations omitted).  As the Supreme Court has made clear, an extortion claim will only serve as a basis for a RICO violation when it is "capable of being generically classified as extortionate." <u>Id.</u>  Even if the claim

technically falls into the language of a state's law, a RICO offense grounded in extortion necessarily requires a defendant to make a threat to obtain something of value.

At best, Plaintiff can show that Defendants were trying to decrease her ownership interest in the company.  She cannot, however, show that Defendants employed any "threats" to obtain something from her.  Indeed, she fails even to allege what Defendants were purportedly attempting to gain.

In sum, Plaintiff's failure to plead two predicate offenses is fatal to her RICO claims.  <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 889 (1st Cir. 1997).  Even if this were not the case, Plaintiff's RICO claims would fail for a second reason.

### b.   Pattern of Activity

To differentiate single acts of wrongdoing from consistent reprehensible conduct, civil RICO includes a "pattern" requirement.  Two predicate offenses are required to establish a pattern, and they must be connected to one another and "amount to or pose a threat of continued criminal activity."  <u>N. Bridge Assoc., Inc. v. Boldt</u>, 274 F.3d 38 (1st Cir. 2001).

The First Circuit has provided helpful guidance in this area.  In Efron v. Embassy Suites (Puerto Rico), Inc., a minority partner in an LLP filed a RICO suit against his four partners for intentionally diluting the minority's interest in the corporation.  223 F.3d 12 (1st Cir. 2000). The plaintiffs accused the defendants of committing seventeen acts of mail fraud.  The Court of Appeals found that each alleged incident of mail fraud was aimed at one single goal: to transform the partnership by diluting the minority interest.  Id. at 18.  The court said, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  Id.  at 20 (citations omitted).  Though Plaintiff described a number of different incidents, no pattern was ultimately established.

To reach that conclusion, the Efron court listed a number of factors to consider when determining whether a broad, continuous pattern of criminal activity exists. These include: (a) whether there was a single victim or multiple victims; (b) whether the defendant's acts were

limited to a single scheme or multiple schemes; (c) the duration of the scheme; and (d) whether the scheme had a singular, fixed objective and finite end point, or whether it threatened to continue indefinitely.  Id. at 18. Collectively, the factors suggest that the term "pattern" represents a broad scheme, spanning a significant period of time, continuing into the future, and targeting a number of individuals.  See, e.g., Sys. Mgmt., Inc. v. Loiselle, 303 F.3d 100 (1st Cir. 2002)(multiple acts of mail fraud in connection with a single set of state contracts did not create a "pattern" for RICO purposes)

Like the plaintiff in Efron, Plaintiff here cannot establish a "pattern" of racketeering activity.  At best, Plaintiff's complaint alleges a single scheme, aimed at a single victim, with a single goal –- to dilute Plaintiff's interest in the company.  No facts suggest that the alleged conspiracy included any other victims, that it was a standard part of Defendants' business, or that it would continue into the future.  Absent such facts, Efron requires dismissal.

In sum, because Plaintiff fails to establish any RICO

predicate offense and cannot show a pattern of behavior, her RICO claims cannot survive Defendants' motion.[3]

2.  Common Law Claims: Counts I-VI

On claims arising under diversity jurisdiction, a district court will generally apply the choice-of-law provisions of the state in which the court sits.  Mariasch v. Gillette Co., 521 F.3d 68, 71 (1st Cir. 2008)(citations omitted).  In most cases Massachusetts relies on the "functional approach" to determine which state's law applies.  Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985).  Under this analysis, the court applies the law of the state with the most significant relationship to the underlying events.

The general choice-of-law rules in Massachusetts may be supplanted, however, by the "internal affairs doctrine." Harrison v. NetCentric Corp., 433 Mass. 465, 471-72 (2001). Under this analysis, a court shall apply the law of the state of incorporation "in matters relating to the internal

---

[3] Defendants also allege that Plaintiff fails the causality prong of the RICO analysis.  Given the court's finding on the other, predominant RICO requirements, a discussion on that argument is unnecessary.

affairs of a corporation . . . such as the fiduciary duty owed to shareholders." Id. at 470; see, e.g., In re Verisign Inc. Derivative Litig., 531 F. Supp. 2d 1173, 1215 (N.D. Cal. 2007)(finding that the internal affairs doctrine can cover claims for: breach of fiduciary duty; accounting; unjust enrichment; recession; constructive fraud; waste; breach of contract; gross management; and restitution.) This rule allows a corporation to conform its internal affairs to the laws of one state, rather than the demands of multiple, potentially conflicting, sets of laws.

Here, Defendant Espy is a Texas corporation.  All of the claims stem from a disagreement among shareholders and thus arise from an internal dispute of the corporation. This is precisely the type of case the "internal affairs doctrine" was designed for.  See, e.g., 380544 Canada, Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199, 233 (S.D.N.Y. 2008).  Texas law will therefore govern Plaintiff's common law claims.[4]

---

[4] Even if the "functional approach" applied, Texas law would still govern this case.  The matter involves a Texas corporation, and the underlying events emanated from Texas. For purposes of the choice-of-law analysis, Texas has a stronger relationship to the underlying events than

a.   Underline{Count I and II: Unjust Enrichment and Breach of
     Fiduciary Duty}

To plead a breach of fiduciary duty, Plaintiff must
show: (1) a fiduciary relationship between the parties; (2)
a breach of the duty; and (3) either an injury to Plaintiff
or a benefit to Defendants.  Jones v. Blume, 196 S.W. 3d 440
(Tex. App. 2006).

Defendants contend that Plaintiff's allegations fail to
satisfy any of the elements for a claim of breach of
fiduciary duty.  First, Plaintiff does not assert that the
company received inadequate consideration for the additional
shares provided to the Defendants.  Nor does Plaintiff argue
that the decision to award the new shares to the individual
Defendants was somehow illegal.  The issuance of shares
alone, in Defendants' view, cannot establish a breach of
fiduciary duty.  See, e.g., Gentile v. Rosette, 906 A.2d 91,
102 (Del. 2006).

Second, Defendants argue that they had no obligation to
issue dividends to Plaintiff.  See Argo Data Res. Corp. v.
Shagrithaya, 380 S.W.3d 249, 270 (Tex. App. 2012).  Merely

Massachusetts.

-17-

stating that dividends were not distributed is insufficient to show that any officer breached his or her duty.

Finally, according to Defendants, Plaintiff has failed to show that any bonuses or salaries were improper. Specifically, Plaintiff does not allege that the officers lacked the authority to grant or receive the salary, that the money was not commensurate with their services, or that the salaries and bonuses were not competitive within the marketplace.

Defendants are correct that each accusation, on its own, would not necessarily constitute a breach of fiduciary duty with respect to their good faith obligations to the corporation itself.  However, another theory, one respecting Defendants' duty to minority shareholders, allows Plaintiff to move past the plausibility hurdle.

In Texas, a plaintiff may bring a claim for breach of fiduciary duty by way of oppressive conduct.[5]  Under this

---

[5] Although Defendants are correct that a claim for "oppressive conduct" can be asserted as an independent cause of action, a breach of fiduciary duty claim "by way of oppressive conduct" is also recognized.  For example, in Redmon v. Griffith, 202 S.W.3d 225, 238 (Tex. App. 2006), the court considered both a claim of shareholder oppression and a separate breach of fiduciary duty claim.  However, it

theory, majority shareholders who have control of the company, particularly in the context of a close corporation, may have a duty of fair dealing to minority owners. Specifically, majority shareholders must avoid oppressive conduct, which includes any actions "that substantially defeat the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture." Redmon, 202 S.W.3d at 234, citing Willis v. Bydalek, 997 S.W.2d 798, 801 (Tex. App. 1999).  Majority shareholders must also avoid "burdensome, harsh or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely."  Id.

   Oppressive conduct can manifest itself in a number of

_____

conflated the two in the discussion of the fiduciary claim and allowed that count to proceed by way of the oppressive conduct.  Id.  What matters "is not terminology; rather, it is the realization that minority shareholders are especially vulnerable in close corporations, and that, as a consequence, the majority has special duties." 20 Tex. Prac. Bus. Org.-30:32 (3d. ed.).

forms.  It may include denying a shareholder reasonable access to information, or utilizing corporate funds to the detriment of minority shareholders.  Redmon, 202 S.W.3d at 238.  It can also include the malicious suppression of dividends.  See, e.g., Patton v. Nicholas, 154 Tex. 385, 394 (1955)("Undoubtedly the malicious suppression of dividends is a wrong akin to breach of trust, for which the courts will afford a remedy.")  A plaintiff need not rely on any one specific act.  Instead, a court must examine the general conduct of the majority shareholders and consider whether minority owners are permitted to participate in the management of the corporation.  The court may also scrutinize the reasonableness of any returns provided on a minority shareholder's investment and whether their reasonable expectations were satisfied.  See also Duncan v. Lichtenberger, 671 S.W. 2d 948 (Tex. App. 1984).

At this nascent motion-to-dismiss stage, Plaintiff has presented enough evidence to make it "plausible" that Defendants, who have majority control of the company, acted to freeze Plaintiff out of the corporation.  Defendants awarded themselves increased shares in the company, thereby

shrinking Plaintiff's ownership interest by half. Simultaneously, Defendants paid themselves substantial salaries and bonuses, but neglected to provide any dividends, or any other benefit whatsoever, to Plaintiff. As a result, Plaintiff's role in the corporation has diminished, while any return based on her ownership has been eliminated.  Defendants have, by their unilateral action, inflated their authority in the corporation at the expense of Plaintiff's rights.

Defendants may have legitimate business reasons for their decisions.  Given the scrutiny Texas courts require for these types of claims, however, Plaintiff may well prove that Defendants' actions were unfair, unreasonable, and in violation of their duties as majority shareholders.  Her claim for breach of fiduciary duty therefore survives.

Since Plaintiff must be permitted to proceed to discovery on her breach of fiduciary duty claim, her count for unjust enrichment is also entitled to move forward.  To recover on a theory of unjust enrichment, Plaintiff must show that the "party sought to be charged (has) wrongfully secured a benefit or (has) passively received one which

would be unconscionable for that party to retain." <u>RDG Ltd. P'ship & RDG Partners v. Gexa Co.</u>, No. 14-04-00679, 2005 WL 949171 (Tex. App. April 26, 2005).  The claim for unjust enrichment is not an independent cause of action, <u>Mowbray v. Avery</u>, 76 S.W. 3d 663, 679 (Tex. App. 2002), but is a theory of recovery against a party who has "obtained a benefit by fraud, duress, or the taking of an undue advantage." <u>RDG</u>, 2005 WL 949171 at *3, <u>citing</u> <u>Heldenfels Bros., Inc. v. City of Corpus Christi</u>, 832 S.W. 2d 39, 41 (Tex. 1992).

In breaching their fiduciary duty, Plaintiff contends, Defendants have unjustly received an increased ownership in the corporation.  <u>See</u> <u>Friddle v. Fisher</u>, 378 S.W.3d 475, 485 (Tex. App. 2012)(noting that the unjust enrichment claim, among others, was anchored on a breach of fiduciary duty count).  Whether Defendants breached that duty, and therefore whether it is unconscionable for Defendants to retain their increased share of ownership at Plaintiff's expense, is a question of fact not resolvable at this juncture.[6]

---

[6] Defendants argue that the claim for unjust enrichment must be raised derivatively on behalf of the corporation. This argument is unpersuasive.  The fiduciary duty asserted

b.   <u>Count III: Conversion</u>

Plaintiff must establish four elements to succeed on a claim of conversion: (1) Plaintiff was owed or had possession of property or entitlement to posses it; (2) Defendant unlawfully, and without authorization, exercised control of that property; (3) Plaintiff demanded return of the property; and (4) Defendant refused to return the property.  <u>Tex. Integrated Conveyer Sys. Inc. v. Innovative Conveyor Concepts, Inc.</u>, 300 S.W.3d 348, 366 (Tex. App. 2009).  Here, Plaintiff accuses Defendants of converting money in the form of bonuses, salaries, and stock advantages that Defendants provided to themselves.  In her view, she had a right to this property.

Two problems undermine this claim.  First, Plaintiff does not present facts to satisfy each element of a conversion claim.  Specifically, she fails to state that she demanded return of any property, or that Defendants refused to return the property.  See <u>Fields v. Keith</u>, 174 F. Supp.

───────────────────

is owed to the Plaintiff, the minority shareholder. Therefore, the claim for breach of this duty, and for recovery of funds obtained through unjust enrichment, may be asserted by Plaintiff personally.

2d 464, 482 (N.D. Tex. 2001).

Moreover, the complaint does not address the complication that the chattel allegedly converted is money. It is well established that if a debt can be discharged by payment alone, it is not considered "property" that can form the basis of a claim for conversion.  Bobby Smith Brokerage, Inc. v. Bones, 741 S.W.2d 621, 623 (Tex. App. 1987).

Here, all Plaintiff alleges is that Defendants "removed and otherwise converted funds."  (Compl. 9, Dkt. No. 1.) Since Plaintiff merely seeks to recover a general debt, she fails adequately to identify a specified piece of property and cannot make out this claim.

For all these reasons, Defendants' motion to dismiss Plaintiff's count for conversion will be allowed.

      c.  <u>Count IV: Civil Conspiracy</u>

To succeed on a claim of civil conspiracy Plaintiff must offer allegations sufficient to satisfy five elements. A plaintiff must plead: (1) that there were two or more people; (2) with an object to be accomplished; (3) a meeting of the minds; (4) an unlawful overt act; and (5) damages that resulted from the conspiracy.  <u>Tri v. J.T.T.</u>, 162

S.W.3d 552, 556 (Tex. 2005).  A plaintiff must also show that the defendants specifically intended to cause the alleged injury.  <u>Triplex Commc'ns Inc. v. Riley</u>, 900 S.W. 2d 716, 719 (Tex. 1955).  This cause of action penalizes a joint effort "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  <u>Firestone Steel Prods. Co. v. Barajas</u>, 927 S.W.2d 608, 614 (Tex. 1996).

Defendants' only argument in support of dismissal of this claim is that the complaint lacks an adequate allegation of any unlawful, overt act.  However, in successfully pleading a claim for breach of fiduciary duty, as discussed above, Plaintiff <u>has</u> met that requirement.  <u>See</u> <u>Lesikar v. Rappeport</u>, 33 S.W. 3d 282, 302 (Tex. App. 2000)(noting that breach of fiduciary duty can constitute the underlying tort for civil conspiracy claims).

Plaintiff, at least at this stage of the case, has also satisfied the other elements of the claim.  She presents facts that, viewed as a whole, illustrate a nefarious motive -- Defendants intended to work together, and then did jointly engage in an effort, to freeze Plaintiff out of the

company.  Specifically, she alleges that there was a secret
"rump" meeting of majority stockholders where relevant
decisions were made, and the parties either explicitly or
tacitly agreed to proceed with their scheme.  <u>See</u>, <u>e.g.</u>,
<u>Bourland v. State</u>, 528 S.W.2d 350 (Tex. App. 1975).  As a
result, Plaintiff's ownership share has decreased and her
ability to sustain the burdens of ownership, such as paying
taxes, has been severely compromised.

Whether Plaintiff can assemble a sufficient record to
move her case past the summary judgment threshold is an
issue for a later day.  Since the facts now, taken as true,
can plausibly sustain this claim, it cannot be dismissed.

d.  <u>Count V: Fraud</u>

Plaintiff, in her opposition to the motion to dismiss,
argues that Defendants are liable on a theory of
constructive fraud.  <u>Texas Integ. Conveyor Sys. Inc.</u>, 300
S.W.3d at 366 ("Constructive fraud encompasses those
breaches that the law condemns as fraudulent merely because
they tend to deceive others, violate confidences, or cause
injury to public interests. . . .")  However, in her
complaint, Plaintiff only asserts a claim for traditional

fraud.

Plaintiff can adequately plead a claim for traditional fraud if she can prove four elements: (1) that Defendants made a material representation that was false; (2) Defendants knew the representation was false, or made it recklessly; (3) the statement was made with the intent to induce reliance; and (4) there was actual and justifiable reliance. Ernst & Young, LLP v. Pac. Mut. Life. Ins. Co., 51 S.W. 3d 573, 577 (Tex. 2001).

A claim of constructive fraud would likely have moved forward in tandem with the breach of fiduciary duty claim. However, Plaintiff cannot now recast her claim as a charge of traditional, explicit fraud, as the two theories of fraud are clearly independent causes of action under Texas law. Phillips v. United Heritage Corp., 319 S.W. 3d 156, 167-68 (Tex. App. 2010). For the reasons discussed in the RICO analysis, Plaintiff's traditional fraud claim has no merit. No specific facts establish that Defendants made any misrepresentations, or that they had the necessary fraudulent intent. Supra 8-10.

Though the court must dismiss this claim, Plaintiff can

still obtain the remedy she seeks through her breach of fiduciary duty cause of action. <u>See</u>, <u>e.g.</u>, <u>Patton</u>, 154 Tex. at 392.

    e.  <u>Count VI: Theft</u>

Plaintiff's final common law claim is for theft. To succeed under the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. § 134.001, she must show that: (1) she had a possessory right to some property; (2) Defendants unlawfully appropriated that property; and (3) Plaintiff incurred damages as a result. <u>Wellogix, Inc. v. Accenture</u>, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011).

Plaintiff concedes that, if she can obtain relief elsewhere -- which, for the reasons set forth above, she can -- this claim may be dismissed without prejudice. (Pl's Resp. at 14, Dkt. No. 16.)

Even absent this concession, the court would dismiss this claim, with prejudice, as Plaintiff has not shown a possessory interest that would permit any recovery. At best, Defendants may be liable for breaching their fiduciary duty to Plaintiff by, among other things, minimizing her interest in the corporation. However, even if such allegations were true,

Plaintiff still cannot show that she had a <u>possessory</u> right to some specified chattel that Defendants wrongfully appropriated.   She vaguely alleges that Defendants have "unlawfully appropriated property" without establishing her interest in any particular item.   This is insufficient to sustain a claim for theft.  <u>See</u>, <u>e.g.</u>, <u>Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.</u>, No. H-11-2086, 2012 WL 3028107 at *4 (S.D. Tex. July 24, 2012).   As a result, this final common law claim must also be dismissed.

B.   <u>Motion to Transfer Venue</u>

Section 1404(a) of chapter 28 permits a district court, in its discretion, to transfer a case to another venue where a case could have originally been filed.  While a plaintiff's choice of forum is accorded significant deference, certain circumstances may call for a shift in location.   Factors a court should consider include: the convenience of the parties and witnesses, the interests of justice, and the availability of documents.  <u>Cianbro Corp. v. Curran-Lavoie, Inc.</u>, 814 F.2d 7, 11 (1st Cir. 1987).

Defendants argue that Plaintiff's choice of forum should receive minimal deference because: the matter involves a Texas

Corporation; all relevant meetings occurred in Texas; the relevant documents are in Texas; and the company has had insignificant ties with Massachusetts since 2006. Given these facts, according to Defendants, Plaintiff's choice is entitled to less weight. <u>Atari v. United Parcel Serv.</u>, 211 F. Supp. 2d 360, 363 (D. Mass. 2002).

Furthermore, Defendants say, the Western District of Texas is a more convenient forum. First, most of the individual Defendants reside in Austin, and the others regularly travel there. Second, the key evidence in the case is likely to be in Texas. Finally, the common law claims are governed by Texas law, and thus Texas has a strong interest in the matter.

Though it would be more convenient for Defendants to move the case, that incidental benefit is significantly outweighed by the inconvenience the transfer would create for Plaintiff. That fact alone strongly militates against transferring venue.

Plaintiff resides in Massachusetts, works in Massachusetts, and her children attend school in Massachusetts. She has not been to Texas since 2004, and the burden of requiring her to pursue litigation there would be

considerable.   Moreover, the estate is being probated in Massachusetts, underlining the Commonwealth's interest in this litigation.   Thus, Plaintiff's choice of forum will be respected, and the court will retain the matter.

IV.  <u>CONCLUSION</u>

Although the federal RICO counts are unsupported by adequate allegations, three meritorious common law claims survive Defendants' motion.   Under Texas law, a court must carefully examine actions by majority shareholders that may encroach on the rights of a minority shareholder.   Where, as here, the facts plausibly suggest oppressive conduct, the court must allow the case to proceed.

Therefore, Defendants' Motion to Dismiss (Dkt. No. 8) is hereby ALLOWED as to Counts III, V, VI, VII and VIII, and DENIED as to Counts I, II, and IV.   Defendants' Alternative Motion to Transfer Venue is also DENIED.

The case is hereby referred to Magistrate Judge Kenneth P. Neiman for a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge